UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVALINA GONZALEZ, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 20-cv-01704 |
| CREDENCE RESOURCE MANAGEMENT, LLC and AT&T CORP., | ) |
| | ) Jury Demanded |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Evalina Gonzalez, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/1 ("ICFA"), and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331, and pursuant to 28 U.S.C. §1367 for her state law claims.

2. Venue is proper in this District because parts of the acts and transactions occurred here and Defendants transact substantial business here.

## STANDING

3. Plaintiff has suffered an injury in fact that is traceable to Defendants' conduct and that is likely to be redressed by a favorable decision in this matter.

4. Specifically, Plaintiff suffered a concrete injury and harm to her reputation as a result of Defendant sharing of false information regarding alleged debts with a third party. *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 346 (7th Cir. 2018).

1

## PARTIES

5. Plaintiff, Evalina Gonzalez ("Plaintiff"), is a resident of the State of Illinois, from whom Defendant attempted to collect a consumer debt allegedly owed for a defaulted AT&T Mobility cellular account.

6. Plaintiff is thus a "consumer" as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

7. Defendant, Credence Resource Management, LLC ("CRM"), is a Nevada limited liability company with its principal place of business in Dallas, Texas. It is registered to do business in Illinois. Its registered agent is Illinois Corporation Service C, 801 Adlai Stevenson Drive, Springfield, Illinois, 62703.

8. CRM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

9. CRM holds a collection agency license from the State of Illinois.

10. CRM regularly collects or attempts to collect defaulted consumer debts due or asserted to be due another, and is a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

11. Defendant, AT&T Corp. ("AT&T") is a New York corporation that does or transacts business in Illinois. Its registered agent and address is C T Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois, 60604.

## FACTUAL ALLEGATIONS

12. According to Defendants, Plaintiff incurred an alleged debt for goods and services used for personal family or household purposes, originally for a AT&T Mobility account used

for personal purposes ("alleged debt"). The alleged debt is thus a "debt" as that term is defined at § 1692a(6) of the FDCPA.

13. Due to her financial circumstances, Plaintiff was unable pay the alleged debt and it subsequently went into default.

14. AT&T then retained a debt collector, Enhanced Recovery Company ("ERC"), who attempted to collect the alleged debt from Plaintiff.

15. ERC began reporting the alleged debt on Plaintiff's credit report. (Exhibit A, Redacted Expert from Plaintiff's First Experian Credit Report).

16. In response to collection attempts by AT&T's collection agencies, Plaintiff retained the services of Community Lawyers Group, who on May 19, 2017, sent an electronic communication to AT&T, via its collection agency ERC, indicating that Plaintiff disputed the alleged debt. (Exhibit B, Dispute and Representation Letter).

17. ERC received Plaintiff's dispute on May 19, 2017, updated its collection file on Plaintiff, and removed the AT&T tradeline from Plaintiff's credit report.

18. Now unable to contact Plaintiff without going through her lawyer, and unable to report the debt without noting its disputed status, ERC returned the account to AT&T and ceased efforts to collect the alleged debt.

19. AT&T retained another collector, AFNI, Inc. ("AFNI") in an attempt to collect the alleged debt.

20. AFNI began reporting the alleged debt on Plaintiff's credit report.

21. However, AFNI took note of Plaintiff's previous dispute and reported the alleged debt as having been disputed by the consumer, as is proper and required under the FDCPA and FCRA. (Exhibit C, Redacted Excerpt from Plaintiff's Second Experian Report).

22. At some point, AT&T then retained a third collector, Defendant CRM, in an attempt to collect the alleged debt.

23. AT&T passed its collection file on to ERC to assist in its collection of the alleged debt.

24. CRM received the collection file from AT&T and reviewed the information prior to attempting to collect the alleged debt.

25. On information and belief, the collection file would have information regarding Plaintiff and the alleged debt, including Plaintiff's contact information, a balance history and any notice of representation or dispute on the file.

26. Attorney representation and the dispute status of an alleged debt is the type of information typically included in a collection file, along with a consumer's name, contact information and the balance history on the account. *Hobfoll v. Merchants Credit Guide*, No. 18 C 1912 (N.D. Ill. February 13, 2019).

27. On February 8, 2020, CRM communicated credit information regarding the alleged debt to the Experian consumer reporting agency, including a balance, an account number, and the date reported. (Exhibit D, Redacted Excerpt from Plaintiff's Third Experian Report).

28. CRM failed to communicate that Plaintiff's alleged debt was disputed when it communicated other information to Experian regarding the alleged debt.

29. Not only did CRM have the benefit of AT&T's collection file to inform it of prior communications, which was enough for AFNI to note Plaintiff's dispute, but CRM also had access to Plaintiff's credit report itself.

30. Yet CRM still failed to properly mark Plaintiff's dispute.

4

31. 15 U.S.C. § 1692e of the FDCPA provides as follows:

> **False or misleading representations**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
>
> **. . . (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed. . . .**

32. CRM failed to communicate a dispute to the Experian credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the alleged debt to the credit reporting agency.

33. Credit reporting by a debt collector constitutes an attempt to collect a debt. *E.g., Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) (a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed in part to wrench compliance with payment terms from its cardholder").

34. CRM materially lowered Plaintiff's credit score by failing to note Plaintiff's dispute.

35. A debt reported with no dispute results in a much lower credit score than a report of both the debt and the dispute. *Saunders v. Branch Banking and Trust Co. of VA*, 526 F. 3d 142, 146-47 (4th Cir. 2008).

36. The serial hiring of collection agencies for purposes of circumventing a consumer's attempt to invoke their rights under federal law constitutes an unfair practice. *Duarte v. Convergent Outsourcing, Inc.,* No. 17 C 16051, 2018 WL 3427910 at *3 (N.D. Ill. July 16, 2018) (analyzing the practice under the Illinois Consumer Fraud Act).

37. The providing of consumer cable television services to Illinois consumers, and billing for those payments, are activities of trade and commerce as those terms are defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq ("ICFA").

38. At all times relevant to this complaint, AT&T authorized, directed, and ratified CRM's actions taken in connection with the collection of the debt.

39. Thus, AT&T was at all times relevant to this Complaint, and currently is, engaged in trade and commerce in the State of Illinois by offering, billing for, and collecting payments for cable television accounts for Illinois consumers.

40. The ICFA defines "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of her trade or business but for her use or that of a member of her household." 815 ILCS 505/1(e).

41. Plaintiff is a "consumer" as that term is defined in the ICFA because Plaintiff contracted with AT&T for a consumer credit account primarily for personal and household purposes.

42. Section 2 of the ICFA prohibits unfair or deceptive practices and states, in relevant part, as follows:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.**

815CS 505/2.

43. AT&T employed unfair methods of competition in violation of Section 2 of the ICFA by switching to a different debt collection company in order to subvert Plaintiff's right to dispute the alleged debt under federal law.

44. Plaintiff was damaged by AT&T's conduct as explained supra.

45. At all times relevant to this complaint, AT&T authorized, directed, and ratified CRM's actions taken in connection with the collection of the debt.

46. Defendants' communications cause negative emotions including hopelessness, annoyance, aggravation, and other garden variety emotional distress.

47. Defendants' collection communications are to be interpreted under the "unsophisticated consumer" standard. *See, e.g., Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

**COUNT I – FAIR DEBT COLLECTION PRACTICES ACT—CREDENCE**

48. Plaintiff realleges and incorporates the above paragraphs into this count.

49. CRM failed to communicate a dispute to the Experian credit reporting agency, in violation of 15 U.S.C. § 1692e(8), when it knew or should have known about the dispute and communicated other information regarding the alleged debt to the credit reporting agency.

WHEREFORE, Plaintiff asks that this Court enter judgment in her favor and against Defendant as follows:

    A. Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

    B. Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2);

    C. Costs and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3); and

    D. Such other or further relief as this Court deems proper.

## COUNT II—ILLINOIS CONSUMER FRAUD ACT FOR FALSE AND DECEPTIVE BUSINESS PRACTICES—DIRECTV

50. Plaintiff re-alleges above paragraphs as set forth fully in this count.

51. AT&T employed unfair methods of competition in violation of Section 2 of the ICFA by switching to a different debt collection company in order to subvert Plaintiff's right to dispute the alleged debt under federal law.

52. Plaintiff was damaged by Defendant AT&T's actions including harm to her reputation.

WHEREFORE, Plaintiff requests that the Court enter judgment in Plaintiff's favor and against Defendants as follows:

    A.    Actual damages suffered by the Plaintiff;

    B.    Punitive damages;

    C.    Plaintiff's attorney fees and costs;

    D.    Such other or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

By: s/Michael J. Wood
One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com

8